Frederic S. Bermas, J.
Defendant Sherry Netherland Chemists Corp., a retail pharmacy, is charged with violation of paragraphs (1) and (4) of subdivision (g) of section 75.11 of the New York City Health Code.[1]
The facts as adduced from the testimony of Inspector James C. Johnson of the New York City Health Department, at a hearing for motion to suppress held by this court, are as follows:
Inspector Johnson arrived at defendant’s premises at 783 Fifth Avenue, New York City on July 23,1973, at approximately 10:00 a.m. He thereupon identified himself as an inspector for the Health Department and requested to speak to the pharmacist in charge. The president of Sherry Netherland Chemists Corp., Henry Rosen, approached the counter and Inspector Johnson identified himself and explained that he was on a routine audit of the disposition of barbiturate drugs and asked if he could proceed with an audit and inspection of the defendant’s records concerning Tuinal. Mr. Rosen consented and conducted Inspector Johnson to a raised level which contained the prescription department. At this point Inspector Johnson requested the records of several specific drugs and informed Mr. Rosen that these same drugs were being routinely audited in that area of Manhattan. Mr. Rosen acquiesced and said that he would supply what was necessary to complete the *531 audit, which he did. There had been no search warrant nor any prior notice to defendant.
Defendant moves to suppress on the grounds that the search was made without warrant, consent or suspicion of wrongdoing. He claims that evidence was seized in violation of defendant’s Fourth Amendment rights. Further, he claims that he is licensed by the Education Department of the State of New York and the Bureau of Narcotics and Dangerous Drugs of the United States Department of Justice. He also asserts that he is not licensed by the New York City Health Department. Defendant claims that he should have been warned of his right to refuse a warrantless search and that he should have been given his Miranda warnings.
The People point out that the routine inspection of a regulated business is valid without a search warrant, citing a recent United States Supreme Court case, United States v. Biswell (406 U. S. 311), which held that a warrantless seizure by a Federal treasury agent of unlicensed firearms from a licensed firearms dealer pursuant to subdivision (g) of section 923 of the Gun Control Act of 1968 (U. S. Code, tit. 18, § 921 et seq.) was valid under the Fourth Amendment. The Biswell decision (supra) distinguished Colonnade Catering Corp. v. United States (397 U. S. 72), on the ground tha(; in Colonnade, excessive force was used, although the search was pursuant to the lawful regulation of the liquor industry.
“ In the context of a regulatory inspection system of business premises that is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute ”. (United States v. Biswell, 406 U. S., atp. 315.)
The court, in Biswell, also said (p. 316): “ It is also apparent that if the law is to be properly enforced, and inspection made effective, inspections without warrant must be deemed reasonable official conduct under the Fourth Amendment. In See v. City of Seattle, 387 U. S. 541 (1967), the mission of the inspection system was to discover and correct violations of the building code, conditions that were relatively difficult to conceal or to correct in a short time * * * We expressly refrained in that case from questioning a warrantless regulatory search such as that authorized by § 923 of the Gun Control Act. Here, if inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant, could easily frustrate inspection; and if the necessary flexibility as to time, scope, and *532 frequency is to be preserved, the protections afforded by a warrant would be negligible.”
The case of United States v. Del Campo Baking Mfg. Co. (345 F. Supp. 1371 [Dist. Ct., Delaware, 1972]), explained the rationale of the Biswell decision. In Del Campo, inspectors of the Food and Drug Administration searched the defendant’s business premises without a warrant; the defendant’s business did not have a Federal license. The court, in Del Campo, held that the decision in Biswell did not depend on the fact that the business was Federally licensed but that it was pervasively regulated.
The recent case of United States v. Anile (352 F. Supp. 14 [Dist. Ct., N. D. W. Va., 1970]), differs from Biswell (supra), in that the inspection in Anile was not a routine, periodic one, but was prompted by complaints and was preceded by four previous visits by authorities. Also, the defendant in Anile was told by the authorities that he could not choose to withhold his consent to the inspection.
New York State decisions have also upheld warrantless search in similar situations. In Matter of McKaba v. Board of Regents (30 A D 2d 495), it was held that a warrantless search of pharmacist’s records was proper on the ground that the pharmacist consented to the search by accepting his license. The Appellate Division (3d Dept.) stated (p. 498): “ In accepting his license the petitioner accepted the incident obligation of keeping the required records and permitting their inspection. The dangers and hazards of narcotics to health and public safety are known to all. Such records are nonprivileged records required by statute to be kept for proper regulation and protection of the general public and their inspection without a search warrant was constitutionally valid. (People v. Laverne, 14 N Y 2d 304.) ”
With regard to warrantless search, defendant relies heavily upon Camara v. Municipal Ct. (387 U. S. 523) and its companion case, See v. City of Seattle (387 U. S. 541). In Camara, at page 539, it was held that under the Fourth Amendment a defendant had a constitutional right to insist that inspectors obtain a warrant to search and may not constitutionally be convicted for refusal to consent to the inspection.
In See, a fire department inspector sought access to See’s locked commercial warehouse during a routine periodic inspection of premises subject to the municipality’s fire code. See was prosecuted for refusing to permit an inspector to enter *533 without a warrant. The Supreme Court here extended Camara to commercial structures not used as private residences.
Defendant Sherry Netherland, by its president Mr. Rosen, never refused admittance, never demanded that Inspector Johnson secure a search warrant, nor did he refuse consent to audit to Inspector Johnson.
The defendant submitted a separate brief on the question of consent, again citing Camara (supra) and See (supra). He also cited Schneckloth v. Bustamonte (412 U. S. 218), a recent United States Supreme Court decision which specifically dealt with the subject of consent.
A brief synopsis of the Schneckloth case reveals that during the course of a consented search of a car that had been stopped for traffic violations, evidence was discovered that was used to convict respondent of unlawfully possessing a check. The Supreme Court held (pp. 248-249): “ We hold only that when the subject of a search, is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject’s knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. ’ ’
In the case at bar, Inspector Johnson testified that defendant voluntarily took him behind the counter to a raised level where the prescription department is kept and voluntarily produced the books and inventory. There is nothing in the testimony to imply any type of duress or coercion exercised by Inspector Johnson upon the defendant.
From the totality of the circumstances here it must be concluded that defendant consented to the search.
Suspicion of wrongdoing was not necessary since this inspection was performed pursuant to the New York City Health Code, which is within the police power of the municipality, and defendant did consent to an audit of the records.
The defendant incorrectly relies upon Miranda v. Arizona (384 U. S. 436) asserting that defendant should have been warned of his rights. In Miranda (supra) the ¡Supreme Court held that an officer is required to advise a person of his rights at the start of the interrogation process. Miranda deals with a defendant who is already in custody.
*534 The Supremé Court in Schneckloth (412 U. S. 218, 240, 241 supra) in dicta referring to Miranda, said with reference to Miranda v. Arizona (supra) “ the Court found that custodial interrogation by the police was inherently coercive, and consequently held that detailed warnings were required to protect the privilege against compulsory self-incrimination. The Court made it clear that the basis for decision was the need to protect the fairness of the trial itself. * ® *
‘ ‘ There is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment. Nothing, either in the purposes behind requiring a ‘ knowing ’ and ‘ intelligent ’ waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizure.”
Inspector Johnson was therefore not required to give Mr. Rosen any Miranda type warnings when the inspector requested to look at the corporation’s records nor was he required to inform Mr. Rosen that it was Rosen’s right to request a search warrant before permitting inspection. In the case at bar, defendant was only the subject of a routine audit.
This motion to suppress is denied in all respects.

. Subdivision (g) of section 75.11 of the New York City Health Code:
“ (1) A pharmacist, including a pharmacist in charge of a hospital pharmacy, and a practitioner shall maintain records showing the kinds and amounts of barbiturates purchased or otherwise obtained, the dates, names and addresses of persons from whom they are purchased or obtained. A pharmacist shall also file each prescription when filled or refilled.”
“ (4) The records required to be maintained by this section, which may consist of invoices of receipts, customers’ orders, or prescriptions, shall be kept in such a manner that the exact disposition of all barbiturates manufactured or received is at all times accurately accounted for therein.”