**ONONDAGA LANDFILL SYSTEMS, INC., Joseph R. Tripoli and Mary E. Tripoli, Plaintiffs,**

v.

**Henry G. WILLIAMS, Individually, and as Commissioner of the New York State Department of Environmental Conservation, and Richard J. Brickwedde, Individually, and as Regional Attorney for the New York State Department of Environmental Conservation, Defendants.**

No. 84–CV–1637.

United States District Court, N.D. New York.

Jan. 29, 1985.

---

Obold Burstein & McGowan (Alan S. Burstein, Robert A. Barrer, Syracuse, N.Y., of counsel), for plaintiffs.

Robert Abrams, Atty. Gen., Environmental Protection Bureau of State of New York (Douglas L. Ward, Asst. Atty. Gen., Albany, N.Y., of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Presently before the court is defendants' motion to dismiss the complaint and plaintiffs' motion for summary judgment. For the reasons discussed below, the court grants dismissal and denies summary judgment.

## BACKGROUND

Plaintiffs Onondaga Landfill Systems, Inc. (OLSI), Joseph R. Tripoli, and Mary E. Tripoli are the owners and operators of a sanitary landfill in Onondaga, New York. They purchased the landfill from a previous owner and began operations in 1977. In December, 1978, the New York State Department of Environmental Conservation (DEC) held a public hearing on OLSI's permit applications to operate and expand the landfill. The Administrative Law Judge found that OLSI's operations did not satisfy the requirements of 6 N.Y.C.R.R. § 360.8 and expressed particular concern that the landfill posed a threat to the groundwater. By order dated August 31, 1979, the Commissioner of the DEC denied OLSI's permit applications and ordered the landfill closed. The Commissioner found that the landfill site was "fundamentally unsuited" for a sanitary landfill and the operation was not "reasonably capable of ... full compliance with 6 N.Y.C.R.R. Part

360." On May 27, 1981, the Appellate Division of the New York State Supreme Court, Fourth Department, affirmed the Commissioner's decision. *Onondaga Landfill Systems, Inc. v. Flacke*, 81 A.D.2d 1024, 440 N.Y.S.2d 135 (4th Dep't 1981). The New York Court of Appeals subsequently denied OLSI permission to appeal.

In July, 1981, the DEC brought an action in New York State Supreme Court to enforce the Commissioner's August, 1979, order. On July 26, 1982, Supreme Court Judge John Balio ordered the plaintiffs' landfill closed on or before October 31, 1985. Until that time, plaintiffs are permitted to operate the facility. The State court has retained jurisdiction over the landfill and has appointed a receiver to oversee the landfill's operation and closure.

Judge Balio's order provides in pertinent part:

> ORDERED, that the receiver shall have the authority and responsibility to supervise defendant's compliance with 6 NYCRR Part 360 for interim landfill operations and shall have the further authority subject to approval of the Court, to employ an engineer to render expert assistance on environmental issues and advise the receiver on policy matters, particularly with respect to the development, submission, and implementation of a closure plan; and it is further
>
> ORDERED, that the defendant OLSI and its President, JOSEPH TRIPOLI, shall continue to own, possess, and operate subject landfill, provided however, that said defendant, its officers and employees shall abide by all supervisory directives of the receiver concerning operation in compliance with 6 NYCRR Part 360 and such other powers and directives hereinafter set forth; and it is further
>
> ORDERED, that the Commissioner and his employees, aside from routine field inspections, shall communicate directly with the receiver and/or his designee, concerning compliance with environmental regulations; and it is further ...
>
> ORDERED, that the receiver shall report not less infrequently than monthly to the Court on the general status of landfill operations, closure plan preparation, closure, and receivership activities; ....

In July, 1984, the DEC began inspecting plaintiffs' landfill on a "twice daily" basis pursuant to New York Environmental Conservation Law (ECL) § 3–0301(2)(g) [1] and 6 N.Y.C.R.R. § 360.1(j) [2]. Plaintiffs claim that the DEC's inspections constituted permanent monitoring resulting in a violation of their constitutional rights. According to plaintiffs, the DEC's inspector arrived daily in the morning, left for lunch, and returned in the afternoon. Prior to July, 1984, the DEC inspected the landfill for approximately one hour, once or twice a month. Plaintiffs contend that this is the normal rate of inspection at other area landfills.

On November 5, 1984, plaintiff Joseph Tripoli ordered the DEC's inspector to leave the landfill and not return. The DEC applied to the New York State Supreme Court for a search warrant but later withdrew its application. The parties subse-

---

1. N.Y.Envtl.Conserv. Law § 3–0301(2)(g) provides:

   2. To further assist in carrying out the policy of this state as provided in section 1–0101 of the chapter the department, by and through the commissioner, shall be authorized to:
   ....
   g. Enter and inspect any property or premises for the purpose of investigating either actual or suspected sources of pollution or contamination or for the purpose of ascertaining compliance or noncompliance with any law, rule or regulation which may be promulgated pursuant to this chapter. Any information relating to secret processes or methods of manufacture shall be kept confidential.

2. 6 N.Y.C.R.R. 360.1(j) provides:

   Enforcement. Any person who violates any of the provisions of this Part or of any permit issued pursuant hereto, or any order issued by the department's commissioner, shall be liable for the civil, administrative, and criminal penalties given in article 71, title 27 of the ECL. Such a person shall also be subject to any penalties, sanctions or orders resulting from any other applicable provision of article 71 of the ECL. The commissioner or his/her representative is authorized to enter and inspect any property or premises for the purpose of ascertaining compliance or noncompliance with this Part.

quently stipulated to once-a-week inspections.

Plaintiffs filed their federal complaint against the DEC's Commissioner and Regional Attorney on November 26, 1984. The complaint alleges that ECL § 3–0301(2)(g) and 6 N.Y.C.R.R. § 360.1(j) are unconstitutional on their face and as applied. Plaintiffs seek a declaratory judgment and damages.

On January 3, 1985, the state defendants and the Town of Onondaga, plaintiff-intervenors in the state action, applied to New York State Supreme Court Judge Balio for an order to show cause enjoining plaintiffs from interfering with the DEC's inspections of the landfill and awarding civil penalties against plaintiffs for violating 6 N.Y. C.R.R. § 360.1(j). The order is returnable in the State Supreme Court on February 1, 1985. As a result, the validity of the statute and regulation at issue in the present action is now also pending before the state court.

In this federal action, the state defendants have moved for dismissal. Plaintiffs have cross moved for partial summary judgment on the facial constitutionality of both ECL § 3–0301(2)(g) and 6 N.Y.C.R.R. § 360.1(j). For convenience, the court will hereafter refer to both the statute and regulation in question as "the statute", but will mean both.

ABSTENTION

The state defendants argue that this court should dismiss plaintiffs' federal action on grounds of abstention. Recent United States Supreme Court and Second Circuit decisions reveal that abstention is not favored and is the exception rather than the rule. *See e.g. Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Giardina v. Fontana,* 733 F.2d 1047 (1984). In *Colorado River Water Conservation District* the Supreme Court stated:

Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.' *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163, 1166 (1959). '[I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it'. *Alabama Pub. Serv. Comm'n. v. Southern R. Co.,* 341 U.S. 341, 361, 71 S.Ct. 762, 774, 95 L.Ed. 1002, 1015 (1951) (Frankfurter, J., concurring in result).

*Colorado River Water Conservation District,* 424 U.S. at 813–14, 96 S.Ct. at 1244.

The Supreme Court has identified three categories of cases where abstention is appropriate:

Roughly, the three categories of abstention are: (1) avoiding a federal constitutional issue by seeking a state determination of state law; (2) deferring to state resolution of difficult state law questions that involve important public policy or where federal review would be disruptive of state regulation or administration; and (3) declining to restrain state criminal proceedings, collection of state taxes and the like. *See Colorado River Water Conservation District v. United States,* 424 U.S. at 814–16, 96 S.Ct. at 1244–45.

*Giardina,* 733 F.2d at 1052 n. 1. Federal courts in the Eastern District of New York and the District of Maryland have noted that:

[T]he various abstention doctrines are more distinct in theory than in actual practice. They overlap and mix together to form the basis for abstention in partic-

ular cases. This is especially true in cases challenging in federal court state attempts to implement local land use policy.

*Northeast Mines, Inc. v. Town of Smithtown,* 584 F.Supp. 112, 113 (E.D.N.Y.1984), *quoting Kent Island Joint Venture v. Smith,* 452 F.Supp. 455, 461 (D.Md.1978). In the court's opinion this action is the exceptional case where abstention is appropriate. In fact, all three categories of abstention are applicable.

## PULLMAN ABSTENTION

■ The first category of abstention was established in *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The Supreme Court has explained that:

> [F]ederal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided. By abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and 'needless friction with state policies....'

*Hawaii Housing Authority,* 467 U.S. at ——, 104 S.Ct. at 2327, *interpreting Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). *Pullman* abstention is appropriate where: (1) a state statute is unclear or an issue of state law is uncertain, (2) resolution of the federal issue depends upon the interpretation to be given to the state law, and (3) the state law is susceptible to an interpretation that would avoid or modify the federal constitutional issue. *Winters v. Lavine,* 574 F.2d 46, 69 (2d Cir.1978); *Northeast Mines, Inc.,* 584 F.Supp. at 115.

The Supreme Court has cautioned that *Pullman* abstention "is limited to uncertain questions of state law". *Hawaii Housing Authority,* 467 U.S. ——, 104 S.Ct. at 2327. Accordingly, abstention was improper in *Hawaii Housing Authority* because the challenged state statute was unambiguous on its face and did not present an uncertain question of state law.

■ The statute being challenged in the present case is not clear on its face and has never been interpreted by the state courts. In fact, the only case that the court has been able to find which has considered the statute in question is *People v. Hedges,* 112 Misc.2d 632, 447 N.Y.S.2d 1007 (Dist.Ct. Suffolk Co.1982). In *Hedges* the Suffolk County District Court granted the defendant's motion to suppress evidence in a criminal action. The evidence was seized in a warrantless search pursuant to various provisions of the ECL including section 3–0301(2)(g). The court held that the evidence was tainted because the provisions authorizing the search were unconstitutional. Plaintiffs concede that the precedential value of *Hedges* is unclear, and *Hedges* has never been reviewed by the higher state courts. Moreover, the statute in the present action, unlike the statute in *Hawaii Housing Authority,* is limited by other environmental regulations. *See* 6 N.Y.C.R.R. § 360.1(b) (sites subject to inspection are "solid waste management facilities"); 6 N.Y.C.R.R. § 360.8 (site management and closure specifications to be reviewed). Even if the language of the statute in question appears overly broad, the state courts may interpret the statute narrowly to avoid constitutional difficulties. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 612, 95 S.Ct. 1200, 1212, 43 L.Ed.2d 482 *reh. denied,* 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463 (1975); *United States ex rel. Terraciano v. Montanye,* 493 F.2d 682, 685 (2d Cir.), *cert. denied sub nom Terraciano v. Smith,* 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974). Accordingly, the court finds that the statute in question is not flagrantly unconstitutional on its face. Resolution of the plaintiffs' federal claims will therefore depend on the interpretation given the statute. Policy dictates that the state should be allowed the first opportunity to interpret its own law.

## BURFORD ABSTENTION

■ Moreover, the statute in the present action is part of a complex and pervasive

state regulatory system involving an area of traditional and important state concern. This consideration goes to the second category where abstention is appropriate known as *Burford* abstention. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). "The *'Buford'* abstention doctrine 'permits a federal court, in the exercise of its discretion, to relinquish jurisdiction where necessary to avoid needless conflict with the administration by a state of its own affairs'." *Northeast Mines, Inc.*, 584 F.Supp. at 114, *quoting Surowitz v. New York City Employees' Retirement System*, 376 F.Supp. 369, 376 (S.D.N.Y.1974).

In *Louisiana Power and Light Company v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), the district court applied *Burford* abstention where the scope of a previously uninterpreted state law concerning a traditional area of state interest, eminent domain, was challenged. The Supreme Court held that the district court properly stayed the proceedings pending the institution of a declaratory action and subsequent decision by the highest state court. The court stated:

> [W]here the issue touched upon the relationship of City to State, *City of Chicago v. Fielderest Dairies, Inc.*, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355, or involved the scope of a previously uninterpreted state statute which, if applicable, was of questionable constitutionality, *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 229, 77 S.Ct. 287, 292, 1 L.Ed.2d 267, we have required District Courts, and not merely sanctioned an exercise of their discretionary power, to stay their proceedings pending the submission of the state law question to state determination.

*Id.* at 28, 79 S.Ct. at 1072.

Explaining *Burford* abstention in *Colorado River Water Conservation District*, the Supreme Court also stated:

> Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose

importance transcends the result in the case then at bar. *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), for example, involved such a question. In particular, the concern there was with the scope of the eminent domain power of municipalities under state law. *See also Kaiser Steel Corp. v. W.S. Ranch Co.*, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968); *Hawks v. Hamill*, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610 (1933). In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Colorado River Water Conservation District*, 424 U.S. at 814–15, 96 S.Ct. at 1244–45.

The present case involves the constitutionality of an uninterpreted state statute which is part of the state's extensive regulatory scheme to monitor and control landfill operations, garbage and hazardous waste disposal, and pollution in general. This is an area of strong public interest which has traditionally been left to the states. Moreover, the state in its sovereign capacity is involved here as a party, and the state court's decision overseeing the closure of plaintiffs' landfill is implicated. The concern for friction between the federal courts and the state is particularly strong under these circumstances. Considerations of federalism and comity dictate that this court abstain to avoid interfering in the state's complex environmental regulatory system.

## YOUNGER ABSTENTION

The third type of abstention has grown out of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* doctrine, which prohibits the federal courts from enjoining a pending state criminal action or issuing a declaratory judgment that will interfere with the state action, has been extended to civil cases in

*Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482, *reh. denied,* 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463 (1975); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); and their progeny. In *Huffman* the lessee of a theater, which had been ordered closed under a state nuisance statute because obscene films had been shown at the theater, brought an action for declaratory and injunctive relief challenging the statute. The Supreme Court held that the district court should not have entertained an action to enjoin the state court judgment prior to exhaustion of state appellate remedies unless early intervention was justified because the state proceeding was conducted with an intent to harass or in bad faith or the challenged statute was flagrantly and patently unconstitutional. In *Trainor* the state initiated proceedings in state court to regain fraudulently obtained welfare benefits and attached the defendants' credit union account. The defendants commenced a federal action challenging the attachment statute's constitutionality. The Supreme Court held that considerations of equity, comity, and federalism under the *Younger* doctrine required the federal court to dismiss the federal action. More recently, the Supreme Court held that a federal court should have abstained from interfering with the state's ongoing disciplinary proceedings against an attorney. *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

Explaining the policy behind *Younger* abstention, the Supreme Court has stated:

> *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny espouse a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances. The policies underlying *Younger* abstention have been frequently reiterated by this Court. The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the

> belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.,* at 44, 91 S.Ct., at 750. Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.

*Middlesex County Ethics Committee,* 457 U.S. at 432, 102 S.Ct. at 2521. The Supreme Court further stated that "(t)he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." *Id. See also Huffman,* 420 U.S. at 604, 95 S.Ct. at 1208.

█ Construing *Trainor* and *Huffman* narrowly, the court should dismiss the federal action where (1) a prior state action is pending, (2) the state as sovereign is a party to the state action, (3) the state action involves important state policy, and (4) the state action is quasi-criminal in nature or involves abatement of a nuisance.

█ All of these elements are present here. In the state action Judge Balio has retained jurisdiction over the closure of plaintiffs' landfill. Plaintiffs could have raised their constitutional claims before Judge Balio at any time, and he will undoubtedly consider them on the return date of defendants' order to show cause. The state court's closure order also specifically provides for monitoring the landfill under the challenged statute. A declaratory judgment that the statute is unconstitutional would significantly impact the state court's order. As noted above, the state as sovereign commenced the state action, and the state's regulatory scheme is being challenged. Indeed, an adverse ruling from this court would disrupt the state's entire regulation of solid waste disposal. Moreover, plaintiffs were, and still are, operating their landfill without the proper permits, and they have been found in violation of numerous regulations. The state has chosen not to pursue criminal action which is available under the statute in question.

Instead, the state has brought a civil closure action in state court. Judge Balio's closure order also provides close monitoring and control of the landfill operation to prevent further violations and danger to the public. The state action is thus quasi-criminal in nature and involves the abatement of a nuisance. Because the court finds no evidence that the state action was brought to harass or in bad faith and the challenged statute is not flagrantly unconstitutional, *Younger* abstention is appropriate in the present action.

## WISE JUDICIAL ADMINISTRATION

Finally, the Supreme Court has recognized that in a few, exceptional cases "considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'" also permit the federal court to decline jurisdiction in favor of concurrent state proceedings. *Colorado River Water Conservation District*, 424 U.S. at 817–18, 96 S.Ct. at 1246; *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983). *See also Giardina*, 733 F.2d at 1052–53; *Northeast Mines, Inc.*, 584 F.Supp. at 115–16. The circumstances permitting dismissal for wise judicial administration are "considerably more limited than the circumstances appropriate for abstention". *Colorado River Water Conservation District*, 424 U.S. at 818, 96 S.Ct. at 1246. The Supreme Court has refused to prescribe a rigid rule in this area. *Id.* at 818–19, 96 S.Ct. at 1246–47. Instead, the Court has suggested several relevant factors to be considered. These include:

> (1) assumption by either court of jurisdiction over a res or property, (2) convenience to the parties of one forum over the other, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums and (5) whether federal or state law provides the rule of decision on the merits.

*Giardina*, 733 F.2d at 1053, *discussing Moses H. Cone Memorial Hospital*, 460 U.S. 19–26, 103 S.Ct. at 939–42. *See also Colorado River Water Conservation District*, 424 U.S. at 818, 96 S.Ct. at 1246. These factors are not determinative. "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone Memorial Hospital*, 460 U.S. 16, 103 S.Ct. at 937.

Applying the above factors to the present case also indicates that the state court should decide plaintiffs' claims. Although plaintiffs are challenging the present statute's constitutionality, to decide plaintiffs' equal protection claim the court must evaluate how the state applied the statute in monitoring plaintiffs' landfill. The state court has retained jurisdiction over the operation and closure of the landfill, the res, since 1982. More importantly, the state action was not only commenced first, but it has also been pending in state Supreme Court for two and one half years. In fact, if the state administrative proceedings are also considered, the regulation of plaintiffs' landfill has been pending before the state since 1978, more than six years. Since 1982 State Supreme Court Judge Balio has developed considerable expertise in this complicated litigation which the federal court lacks. Because of its expertise, the state court is uniquely able to decide plaintiffs' present claims. Under these circumstances, plaintiffs should not waste limited judicial resources and inconvenience defendants by forcing them to litigate in two forums. The third factor also weighs against a federal forum. As noted above, even though federal constitutional law obviously applies to plaintiffs' present claims, the statute's constitutionality will depend on how the state, in the first instance, interprets its law. Therefore, the interests of wise judicial administration, as well as the constitutional and federal/state concerns of abstention, require the court to decline jurisdiction in the present case.

The court recognizes its responsibility to decide the cases before it and does not decline jurisdiction over plaintiffs' claims lightly. The court does so only after carefully weighing the concerns of equity, com-

ity, federalism, and wise judicial administration against plaintiffs' interests and the knowledge that the state court can fully and fairly litigate plaintiffs' federal claims. For the reasons discussed, the court finds that the present action is the exceptional case where abstention is proper. Because *Younger* abstention is most appropriate and elements of *Burford* abstention are present, the court feels constrained to dismiss the present action rather than staying proceedings pending state litigation.

Accordingly, it is hereby

ORDERED, that

(1) Defendants' motion to dismiss the complaint is granted.

(2) Plaintiffs' motion for partial summary judgment is denied as moot.[3]

SO ORDERED.

---

**3.** Because the court finds that abstention is proper, the court need not consider defendants' other grounds for dismissal.