**UNITED STATES of America**
v.
**Angelo Carmen ANILE.**
**Crim. No. 70–168–E.**

United States District Court,
N. D. West Virginia.
Jan. 2, 1973.

Paul C. Camilletti, U. S. Atty., James F. Companion, Asst. U. S. Atty., Wheeling, W. Va., for plaintiff.

George J. Anetakis, Weirton, W. Va., for defendant.

MAXWELL, Chief Judge.

Angelo Carmen Anile, defendant in the above styled criminal action, is part owner of the State Line Pharmacy, a drugstore located in Hancock County, West Virginia. On the morning of June 3, 1970, defendant's pharmacy was visited by three special agents of the Bureau of Narcotic and Dangerous Drugs who identified themselves, presented defendant with a written notice of inspection and informed him of their desire to conduct an inspection. Defendant and the Government differ over whether the agents advised defendant that they were conducting a routine inspection or an in-depth compliance investigation. The exact distinction between the two has not been clearly brought out in either the record or in the proceedings before this Court. Accordingly, the terms inspection and investigation will be used interchangeably in this opinion.

When the defendant asked, "Do I have a choice," or words to that effect, the agents replied that he did not. Thereupon the agents began an inspection which carried over to the next day. On both days the agents removed and took with them drugs, prescriptions, records and other related material.

The administrative inspections were conducted pursuant to 21 U.S.C. § 360a(d) which provides in part:

For purposes of enforcement of this chapter, officers or employees duly designated by the Secretary, upon presenting appropriate credentials and a written notice to the owner, operator, or agent in charge, are authorized (1) to enter, at reasonable times, any factory, warehouse, or establishment in which food, drugs, devices, or cosmetics are manufactured, processed, packed, or held, for introduction into interstate commerce or after such introduction, or to enter any vehicle being used to transport or hold such food, drugs, devices, or cosmetics in interstate commerce; and (2) to inspect, at reasonable times and within reasonable limits and in a reasonable manner, such factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials; containers, and labeling therein. . . .

Two of the special agents returned on July 15, 1970, and in defendant's absence presented Mr. Hess, a druggist employed by defendant, with another notice of inspection and proceeded to conduct a second inspection of defendant's records.

As a result of discrepancies in defendant's narcotic records, the investigation was culminated with defendant's arrest on August 26, 1970.

At no time during the investigation was a search warrant obtained and

presented to defendant or to any of defendant's employees, and as it appears from the record, defendant was not advised of his constitutional rights until the July visit. This is revealed in the deposition transcript of Special Agent Jack D. Rowe at pages 26–7.

The Government's prosecution of this case following defendant's arrest has been affected by the statutory changes brought about by the enactment of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq.

■ Defendant's preliminary hearing was conducted before a United States Commissioner on October 15, 1970, and the Government filed its information on November 30, 1970. The statutory repeals under the Comprehensive Drug Abuse Prevention and Control Act of 1970 were dated October 27, 1970, with an effective date of May 1, 1971. Prosecutions commenced prior to October 27, 1970, are considered in a savings provision of the Act.

Due to this Act's repeal of 26 U.S.C. § 7237, a felony statute imposing various penalties for narcotic drug and marihuana law violations, the Government has found it necessary to allege a violation of 26 U.S.C. § 7203, a misdemeanor, and proceed by way of an information in this case. 26 U.S.C. § 7203 provides in part:

> Any person . . . required by this title or by regulations made under authority thereof to . . . keep any records, or supply any information, who willfully fails to . . . keep such records, or supply such information, at the time or times required by law or regulations, shall . . . be guilty of a misdemeanor. . . .

Following the commencement of this action the defendant moved to dismiss the information and to suppress and return all seized evidence. The motion to dismiss is based in part on the contention that 26 U.S.C. § 7203 is not applicable to the offense allegedly committed by this defendant. The Government argues on the other hand that the statute is broad enough to cover the facts of this case.

■ The position urged by the Government, at least at this juncture, is valid. Also, the allegations of the multiple count information satisfy the pleading requirements of Rule 7(c), Federal Rules of Criminal Procedure. The omission of a reference to 26 C.F.R. 151 et seq. in the information, this being the offended section relied upon by the United States, does not fatally cripple the charging document. Discovery avenues available to defendant and the requirements of disclosure imposed upon the prosecution effectively cure any disadvantage that is initially apparent. "[E]rror in the citation or its omission shall not be ground for dismissal of the indictment or information . . . if the . . . omission did not mislead the defendant to his prejudice." Rule 7(c), Federal Rules of Criminal Procedure. It cannot be forcefully urged here that such alleged omission was seriously prejudicial to the defendant. The brief of the prosecution, in addition to discovery conferences reported to the Court, cure the omission and complete the omitted citation.

Defendant's grounds presented in support of his motion to dismiss being considered insufficient, and the information in its present state being considered adequate, the motion to dismiss is hereby denied.

Defendant has also moved for the suppression and return of all seized evidence on the ground that the inspections and seizures were illegal in the absence of a search warrant or defendant's consent. Defendant also contends that the agents' failure to advise him of his constitutional rights at the outset of the investigation violated the teachings of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The Government maintains that the defendant, or Mr. Hess in defendant's absence, consented to the warrantless

searches and seizures by failing to object and by permitting the agents to inspect the store. It is the Government's further position that no *Miranda*-type warnings were required since the defendant was not in custody and since the investigation had not reached the accusatory stage.

■ The standards that apply to administrative inspections are not, by their very nature, the same that apply to criminal searches and seizures. United States v. Thriftimart, Inc., 429 F.2d 1006, 1009 (9th Cir. 1970); United States v. Greenberg, 334 F.Supp. 364 (W.D.Pa.1971). Regardless of the type of search conducted, however, it is well settled that an individual may waive any rights that he might have by consenting to that search.

The United States Supreme Court recently considered the relationship of the Fourth Amendment to administrative inspections and the effect of consent on the legality of this type of searches. In United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), an inspection of a pawn shop operator's records and a search of his premises was conducted by a treasury agent under authority of the Gun Control Act of 1968, 18 U.S.C. § 921 et seq. When presented with a copy of the statute authorizing the inspection, Biswell remarked, "Well, that's what it says so I guess it's okay." 406 U.S. at 312, 92 S.Ct. at 1594, 32 L. Ed.2d at 90. In upholding the legality of the search the Court held:

> In the context of a regulatory inspection system of business premises which is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute.

406 U.S. at 315, 92 S.Ct. at 1596, 32 L. Ed.2d at 92.

The authorizing statute in *Biswell*, 18 U.S.C. § 923(g), provides in pertinent part:

> . . . The Secretary may enter during business hours the premises (including places of storage) of any firearms or ammunition importer, manufacturer, dealer, or collector for the purpose of inspecting or examining (1) any records or documents required to be kept by such importer, manufacturer, dealer, or collector under the provisions of this chapter or regulations issued under this chapter, and (2) any firearms or ammunition kept or stored by such importer, manufacturer, dealer, or collector at such premises.

It is readily apparent that there are many similarities between *Biswell* and the present case. This case is unlike *Biswell*, however, in that the inspection of this defendant's records was not the result of a decision to conduct a routine, periodic inspection. The search in *Biswell* was a routine one. Biswell v. United States, 442 F.2d 1189, 1190 (10th Cir. 1971).

■ This inspection, on the other hand, was prompted by complaints that had been received about defendant's activities. Although the complaints have not been set forth in the record, they apparently raised serious questions in the minds of the authorities who received them. There can be no doubt that they were the sole reason for the agent's initial visit to defendant's business and the attendant inspection of his records. It would seem reasonable, therefore, to expect a trained investigator to recognize that the possibility of criminal prosecution was great under these circumstances.

The element of suspicion, and the corresponding increased possibility of criminal prosecution that was injected into this particular inspection, is also evidenced by the testimony of Mr. Hess. Mr. Hess testified that on the initial visit one agent requested him to sign a statement of accusation against the defendant. Since the entire investigation consisted of four visits to the pharmacy over a two and one-half month period, it would appear that at the outset of the investigation criminal action against

this defendant was more than just a mere possibility.

The Court recognizes that on many occasions it can be successfully argued that suspicion does not convert an administrative investigation into a traditional criminal investigation. The problem is, of course, one of degree. The prime consideration must be the protection of recognized basic individual rights, and these individual rights should not be affected by mere labels, particularly where the substance of the matter under investigation is not consistent with the label that is attached to it.

It is further noted that search warrants for administrative inspections may be obtained under the present Comprehensive Drug Abuse Prevention and Control Act of 1970 without establishing probable cause, the standard required in criminal cases. United States v. Greenberg, *supra.* Perfunctory as it may be under present law, the decision of an independent judicial officer is still a necessary factor. That factor is totally missing in this case. Under the facts here, a search warrant obviously should have been obtained prior to the agents' first entry upon defendant's place of business.

The issue of this defendant's consent is still important, however, for even a failure to obtain a search warrant can be waived by valid consent. As noted above, *Biswell* controls on the issue of consent in cases dealing with regulatory inspections. But the facts of this case very strongly imply that the inspection of this defendant's business was a mere formality, an attempt to substantiate conclusions formed prior to the initial inspection, not subsequent to the final examination. Consent to search is a factual question, Rosenthall v. Henderson, 389 F.2d 514 (6th Cir. 1968); United States v. Vickers, 387 F.2d 703 (4th Cir. 1967), cert. denied, 392 U.S. 912, 88 S.Ct. 2069, 20 L.Ed.2d 1369 (1968), and each case is to be decided on its own facts. United States v. Berkowitz, 429 F.2d 921 (1st Cir. 1970). It is

well recognized that in order to waive a right a person must be aware of that right. Here, defendant was told that he had no choice. Having not been fully advised of the circumstances of his rights, defendant's consent was not valid. Mere acquiescence to authority is not consent. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Accordingly it is

Ordered that defendant's motion to suppress and return evidence be, and the same is hereby, granted.