OPINION OF THE COURT
Harry Richard Brown, J.
The defendant is charged with a series of violations of ECL 13-0317 (untagged shellfish) and 13-0325 (unlawful possession of seed clams). He has made a pretrial omnibus motion seeking dismissal of the informations or, in the alternative, suppression of certain evidence. After submission of the moving and answering papers the court adjourned the motion and ordered the defendant to serve *633 notice of this proceeding upon the Attorney-General since the constitutionality of certain State statutes was in issue. (Executive Law, § 71; People v Darson, 48 AD2d 931; see Carter v Carter, 58 AD2d 438,442, n 1.) Now, after the date of adjournment, the Attorney-General having failed to make any submission, the motion will be considered on the papers originally submitted.
First, the motion to dismiss is denied. The defendant has attempted to raise a factual defense and his assertions are controverted by the People. No grounds warranting dismissal pursuant to GPL 170.30 have been demonstrated.
The motion to suppress raises more difficult questions. This motion is predicated on an allegedly unlawful search by Suffolk County Police Officers Loesch and DeMaio at the defendant’s place of employment.[1]
According to the defendant: “As on the particular evening in question there were many clams untagged in bins throughout the establishment. Without invitation, without asking permission, without authority, two (2) Suffolk County police officers entered the premises and began searching the premises. After 30 minutes, the Suffolk County police officers left without issuing any tickets, but I understand from my employer, Mr. LaBua that they returned the next day and left 22 summonses in my name.”
Defense counsel argues that such an entry and search is unlawful, citing ECL 71-0525. This section provides, in *634 part: “1. All police officers, such employees as may be designated by the commissioner, and all peace officers, when acting pursuant to their special duties * * * shall have, particularly, the following powers * * * b. To search without search warrant any boat or vehicle of any kind, any box, locker, basket, creel, crate, game bag, package or any container of any nature and the contents of any building other than a dwelling whenever they have cause to believe that any provision of this article or of any law for the protection of fish, shellfish, Crustacea, wildlife, game or protected insects has been or is being violated” (emphasis added).
First, it is clear that Suffolk County police officers do have authority to search pursuant to this section of the Environmental Conservation Law and the defendant’s argument to the contrary is without merit.
The defendant also argues that a warrantless search pursuant to this section is authorized only if the officers “have cause to believe” a violation has been committed, and that the searching officers in this case had no such cause. The People counter that the officers did, in fact, have cause to believe that violations were being committed.
Further, the People argue that this search was authorized pursuant to another section of the Environmental Conservation Law and that “cause to believe” was not a necessary predicate.
ECL 3-0301 (subd 2, par g) provides, in part, that the Commissioner of the Department of Environmental Conservation shall have the power to: “Enter and inspect any property or premises for the purpose of investigating either actual or suspected sources of pollution or contamination or for the purpose of ascertaining compliance or noncompliance with any law, rule or regulation which may be promulgated pursuant to this chapter.” This section, the People contend, along with sections 13-0305 (sic) and 13-0319 are statutory authority for rules authorizing this search since the Department of Environmental Conservation has *635 authority to promulgate rules concerning shellfish including their labeling and tagging. Among the rules promulgated is 6 NYCRR 42.5 (b) (conditions of a permit). (The defendant’s employer admits to having a permit issued as provided for in ECL art 13.) Section 42.5 (b) provides: “Every permit issued pursuant to article 13 of the Environmental Conservation Law or this Part shall contain the following conditions: (1) the commissioner shall have the right to inspect any facility, building, structure, property or conveyance used for any activity described in this Part”.
And, in further justification of the search the People contend that, “[i]n addition to being a police officer assigned to the Suffolk County Police Department Marine Bureau, Enforcement Division, P.O. Loesch is an environmental conservation officer as that term is used in the Fish and Wildlife Law and the Rules and Regulations promulgated thereunder.”
Thus, they contend the search was authorized because pursuant to 6 NYCRR 42.2 (i): “Commissioner means the Commissioner of Environmental Conservation or his duly authorized representative”, and Officer Loesch would be a duly authorized representative in his capacity as an environmental conservation officer.
In most situations a warrant is a prerequisite to a lawful administrative search. (Camara v Municipal Ct., 387 US 523; See v City of Seattle, 387 US 541.) An exception to this general rule applies to certain “pervasively regulated” industries such as liquor (Colonnade Corp. v United States, 397 US 72) and firearm sales (United States v Biswell, 406 US 311).
In these industries “if the law is to be properly enforced and inspection made effective, inspections without warrant must be deemed reasonable official conduct under the Fourth Amendment * * * [I]f inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope and frequency is to be preserved, the protections afforded by a warrant would be negligible.” (406 US, at p 316.)
*636 In Biswell (supra), the court seemed to indicate that to be valid, the warrantless search of the pervasively regulated industry must be authorized by a statutory scheme “that is carefully limited in time, place and scope”. (406 US, at p 315; see People v Sylvester, NYU, Nov. 20,1981, p 6, col 4; People v Tinneny, 99 Misc 2d 962, 969.)
In United States, ex rel. Terraciano v Montanye (493 F2d 682, 684-685) the Second Circuit Court of Appeals (Friendly, J.) stated that the “time, place and scope” limitation is not the strict statutory requirement that the Biswell (supra) opinion might suggest. Rather, quoting Judge Mansfield’s opinion in Colonnade Corp. v United States (410 F2d 197, 201, revd on other grounds 397 US 72, supra), the court indicated (p 685) that what is required is some means of preventing the government agent from “ ‘roam[ing] at will through any portion of a dwelling house * * * or of commercial property * * * without the occupant or owner being able to determine the need for the inspection, its purpose and its lawful limits’ ”. A warrant or the statutory scheme may serve the function of preventing the proscribed “general search.” When the statute serves that function adequately “the warrant, which would be issued for the asking, would simply track the statute and would give the person who was the object of the search nothing more than he already had” (p 685).
In Terraciano (supra, p 682) the court found that the statutes involved (Public Health Law, §§ 3350, 3390, “as they then read”) adequately limited the warrantless search in regard to place and scope, but not in time. Yet, the search was found to be lawful because as a matter of fact “‘it is the policy of the Health Department to perform inspections only during business hours’.” (493 F2d, at p 685, quoting People v Curco Drugs, 76 Misc 2d 222, 231.)
The shellfish industry in New York is pervasively regulated. (People v Hadley, Dist Ct, Suffolk County, May 14, 1981, Docket Nos. 23799/80, 3694/81, 1436-60/81, 1814/81; cf. State v Mach, 23 Wash App 113 [Washington gillnet fishing industry found to be pervasively regulated]; State v Westside Fish Co., 31 Ore App 299 [Oregon fish canning industry found to be pervasively regulated].)
*637 Thus, the sole issue is whether the warrantless search was validly authorized.
First to be considered here will be ECL 3-0301 (subd 2, par g) and 13-0319 and 6 NYCRR 42.5 (b). These provisions are quite broad. They permit entry and inspection of “any property or premises” (ECL 3-0301, subd 2, par g) and “any facility, building, structure, property or conveyance used for any activity described in this Part” (6 NYCRR 42.5 [b] [1].) Unlike the statutes in Colonnade Corp. v United States (supra), United States v Biswell (supra), and United States ex rel. Terraciano v Montanye (supra), these provisions do not “carefully limit” the place of the search. Further, there is no time limitation included and the People have offered no indication of a general policy concerning the time at which searches are conducted. (Cf. United States ex rel. Terraciano v Montanye, supra.)
ECL 3-0301 (subd 2, par g) does limit the scope of the search it authorizes to “investigating either actual or suspected sources of pollution or contamination or for the purpose of ascertaining compliance or noncompliance with any law, rule or regulation which may be promulgated pursuant to this chapter.” Though this authority is broad it seems," at least arguably, sufficiently limited. But nowhere does the section provide limitations of time or place. Thus, the requisite constitutional protections are not included. Nor does 6 NYCRR 42.5 (b) (1) adequately provide the required limitations. Indeed, none are stated. Further, it is not persuasive to argue that this section establishes that the search was consented to because acquiescence to the search was a condition of the permit. “No State may require, as a condition of doing business, a blanket submission to warrantless searches at any time and for any purpose.” (Matter of Finn's Liq. Shop v State Liq. Auth., 24 NY2d 647, 658; see, also, Sokolov v Village of Freeport, 52 NY2d 341.)
ECL 71-0525 suffers from similar infirmities. Further, it presents another problem. As does ECL 3-0301 (subd 2, par g), this section, at least arguably, limits the scope of the search. But it does not limit the time or place at which a search is permitted.
*638 In addition, the section authorizes a warrantless search when the officers have “cause to believe” there has been or is an ongoing violation. This may not be permissible. If not the equivalent of “probable cause”, as that term is used in the constitutional sense in connection with the requirement of a search warrant, “cause to believe” is very similar. (Cf. People v Rizzo, 40 NY2d 425, 430 [the terms “probable cause,” “cause to believe” and “reason to believe” seemingly used interchángeably by the Court of Appeals].) The problem arises pursuant to the decision of the Supreme Court in Michigan v Tyler (436 US 499). That case involved the right of government officials to search for evidence of arson at a fire scene. Immediately after the fire, before they leave the scene, the officials may conduct a warrantless search. If they leave and wish to return, they must obtain a warrant pursuant to “procedures governing administrative searches.” (436 US, at p 511.) After making those conclusions, the court then stated (p 512) that “[evidence of arson discovered in the course of such investigations is admissible at trial, but if the investigating officials find probable cause to believe that arson has occurred and require further access to gather evidence for a possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime.”
In State v Mach (supra) the Washington statute involved was similar to ECL 71-0525 in that it authorized the warrantless search when there was “reason to believe” there was evidence of violations. However, the Court of Appeals of Washington rejected (p 116) the argument that Michigan v Tyler (supra) would require a search warrant in that case because that Supreme Court case “is addressed to administrative searches which normally do require warrants under the doctrine of Camara v. Municipal Court, 387 U. S. 423, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967); it does not concern administrative searches which normally do not require warrants under the doctrine of United States v. Biswell, supra.” It is difficult for this court to agree with that analysis. The difference between administrative searches which require a warrant and those which do not is not a sound basis for the distinction made by the Washing *639 ton court. The only difference is that in connection with a pervasively regulated industry “the authority of a valid statute” may serve as a substitute for a warrant. (United States ex rel. Terraciano v Montanye, supra, at pp 684-685.) If there is probable cause to believe a crime has been committed it is difficult to understand why it should matter whether an administrative search of the premises involved, where no crime is suspected, would have required a search warrant. “The standards that apply to administrative inspections are not, by their very nature, the same that apply to criminal searches and seizures.” (United States v Anile, 352 F Supp 14, 17, citing United States v Thriftimart, Inc., 429 F2d 1006, 1009.) In Anile (supra), the court was confronted with a search of a pharmacy — a premises subject to warrantless administrative searches pursuant to statute. However, the particular search in question was not done as a routine, periodic inspection. The search was prompted by certain complaints. Thus, the court concluded, a search warrant should have been obtained before the government agents entered the defendant’s place of business.
This court agrees with the conclusion reached in United States v Anile (supra).[2] When the search in question is not a routine, periodic search, but rather, a search undertaken because government officials have “cause to believe” they will find evidence of a crime, the Colonnade-Biswell exception to the requirement that a warrant be obtained prior to a search does not apply. Indeed, pursuant to Michigan v Tyler (supra), it may be that a warrant may be obtained “only upon a traditional showing of probable cause applicable to searches for evidence of crime.” (436 US, at p 512.) ECL 71-0525 (subd b) authorizes a warrantless search when there is “cause to believe” a violation has been or is being committed. Though the term “cause to believe” is not defined in the ECL there is a strong basis for the conclusion that ECL 71-0525 purports to authorize a warrantless *640 search at almost the precise point at which the Constitution would require that a search be conducted pursuant to a warrant. (Contra, see People v Curco Drugs, 76 Misc 2d 222, supra, decided before Michigan v Tyler, supra.)
This court is aware “that a court of original jurisdiction should not resort to statutory interpretation of constitutional dimensions absent the most compelling circumstances”. (People v Babylon Tr., 93 Misc 2d 67, 68.) Further, as noted recently in People v Sylvester (NYLJ, Nov. 20, 1981, p 6, col 4, supra) “ ‘[i]t is a well-established rule that a court of original jurisdiction should never declare a law unconstitutional unless such conclusion is inescapable.’ (People v. Elkin, 196 Misc. 188 [Bohling v. Corsi, 204 Misc. 778, aff’d 306 NY 815), and the tendency is to leave such questions to appellate tribunals (In re City of New Rochelle v. Ecko Bay Waterfront Corp., 182 Misc. 176, aff’d 268 App. Div. 182, aff’d 294 NY 678). ‘Particularly, courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases where life and liberty is involved and the invalidity of the act is apparent on its face.’ (National Psychological Association v. University of the State of New York, 18 Misc. 2d 722, 725-26, aff’d 10 AD2d 688, aff’d 8 NY2d 197, app. dism. 365 U. S. 298).”
Thus, the court does not take lightly the step of suppressing evidence upon the ground that the statutes authorizing the search are unconstitutional. For instance, the court has considered the possibility of following the example of the Court of Appeals, Second Circuit, in United States ex rel. Terraciano v Montanye (supra), in finding that a missing element in the statute could be cured by the actual practice of the government. But there only one element, the limitation as to time, had to be cured. To follow that approach here would be to step too far. “[T]he legality of the search depends * * * on the authority of a valid statute.” (United States v Biswell, supra, at p 315.) Further, for the reasons stated above this court finds unpersuasive the decision of the Washington Court of Appeals as to the application of Michigan v Tyler (supra).
 Accordingly, the motion to suppress the evidence seized as a result of the searches undertaken pursuant to *641 ECL 71-0525 (subd 1, par b), 3-0301 (subd 2, par g) and 6 NYCRR 42.5 (b) is granted.
The People’s cross motion to consolidate is granted. (CPL 100.45, subd 2: 200.20, subd 2.)

. The parties have not addressed the issue of the defendant’s standing to make this motion. The court has considered the question, however, and concludes that he does have the requisite standing. The so-called “automatic standing” rule no longer exists. (United States v Salvucci, 448 US 83; People v Ponder, 54 NY2d 160.) Thus, the defendant’s standing depends upon his expectation of privacy in his place of employment. There may be a right of privacy in a business premises. (E.g., See v City of Seattle, 387 US 541, 543.) That right may extend to an employee. (United States ex rel. DeForte v Mancusi, 379 F2d 897; see, also, People v Evans, 67 Misc 2d 620; contra, see United States v Curtis, 537 F2d 1091,1094, cert den 429 US 962.) While not every employee has such an expectation and corresponding right (United States ex rel. DeForte v Mancusi, supra, at p 905) it must be concluded that this defendant did. The burden of establishing the expectation of privacy is the defendant’s. (People v Ponder, supra, at p 166.) His affidavit in support of the current motion satisfies that burden. He alleges that he was employed as a buyer, driver and foreman. He supervised other workers at the premises — and that “was business as usual”. In such a case the necessary expectation of privacy is established to give rise to the right to challenge an allegedly unlawful search and seizure of the premises. (See United States ex rel. DeForte v Mancusi, supra, at p 903.)

. In this regard People v Rizzo (40 NY2d 425, supra) is inapposite. In that case the court indicated that a warrantless search would be permitted only if there was reasonable cause to believe that the regulated activity (in that case dealing in cigarettes) was being engaged in. This is not the same thing as believing criminal activity was taking place.