OPINION OF THE COURT
John P. Balio, J.
The plaintiff commissioner seeks an injunction restraining the defendant from interfering with administrative inspections of defendant’s landfill. The commissioner also seeks the imposition of civil penalties for prior interference with the inspection process. The defendant Onondaga Landfill Systems, Inc. (OLSI) has cross-moved for a modification of prior orders of this court regarding the date for closure of the landfill, tipping fees, and the powers of the receiver, as well as an order directing the resolution of postclosure monitoring. This decision applies only *985 to the injunctive and penal relief sought by the commissioner on the original motion.
FACTUAL BACKGROUND
OLSI has operated a sanitary landfill in the Town of Onondaga (southwest of the City of Syracuse) since 1977. The property encompasses some 145 acres, of which 65 acres are actually used for the deposit of waste, and is situated near the Town of Camillus boundary. OLSI’s application for a permit to operate a landfill was denied in 1979. However, because it receives and deposits waste from numerous municipalities within Onondaga County (including the City of Syracuse), OLSI has since 1980 been permitted to lawfully conduct landfill operations pursuant to various orders of this court. On July 6, 1984, the court approved a plan requiring closure of the landfill on or before October 31, 1985. Under the plan, OLSI continues to operate designated portions of the landfill until the final closure date.
Since 1977, the State Department of Environmental Conservation (Department) has inspected this landfill twice a month or less frequently. More recently, the inspections have been physically performed on the Department’s behalf by employees of the Onondaga County Department of Health, Division of Environmental Sanitation. Beginning on July 30, 1984, Mark E. Van Valkenburg, the county inspector, performed what have been described as “twice daily” inspections. Essentially, Van Valkenburg arrived at the site in the morning, usually by 10:00 a.m., left the site for lunch, returned after lunch and remained until 3:00 p.m., when the gates closed to outside traffic. On November 5,1984, Joseph Tripoli, the president of OLSI, told the inspector that he would no longer permit “twice daily” inspections, but would allow inspections twice a month. Subsequent attempts to inspect were rebuffed by OLSI. Eventually, the parties temporarily agreed to weekly inspections, and this court directed a continuance of weekly inspections pending determination of this motion.
Initially, the plaintiff sought an administrative search warrant for inspections at the landfill. That application was withdrawn. OLSI then commenced an action in the United States District Court for the Northern District of New York seeking a judgment that New York’s inspection statute is unconstitutional. During pendency of the Federal action, this motion was instituted. The District Court, in a well-reasoned opinion, then dismissed the Federal action based upon the abstention doctrine (see, Onondaga Landfill Sys. v Williams, No. 84-CV-1637 [Jan. 29, 1985]), thereby permitting this application to continue. *986 Although the abstention doctrine is rarely applied, District Judge McCurn concluded that this court should have the first opportunity to interpret the inspection statute in the context of a constitutional challenge.
CLAIMED BASIS OF RELIEF
The commissioner seeks an injunction and the imposition of civil penalties pursuant to ECL 71-2703 (1)[1] and 71-2727 (2).[2]
It is the commissioner’s position that the State’s inspection statute, ECL 3-0301 (2) (g)[3] and the commissioner’s regulations, specifically 6 NYCRR 360.1 (j)[4] authorize the Department to *987 inspect a landfill whenever inspection is deemed necessary by the Department; that the Department has considered twice-daily inspections required by the facts of this case; that the statutory and regulatory scheme is constitutional; and that the inspections do not constitute a search because OLSI has no reasonable expectation of privacy.
The defendant contends that the Department’s inspection request is unconstitutionally overbroad; that an inspection constitutes a search; that both the statute and regulation authorizing the inspection are facially unconstitutional; that unlimited inspections of this landfill violate defendant’s right to equal protection of the laws; and that an improper motive underlies the inspection request, to wit: that frequent inspections are sought by the Onondaga County Legislature, not the Department.
Additionally, defendant claims that the plaintiff has failed to demonstrate the statutory prerequisites for an injunctive relief. The court disagrees. To obtain an ECL 71-2703 injunction, it is not necessary to demonstrate the customary prerequisites to the granting of a preliminary injunction under the CPLR — reasonable likelihood of success on the merits, irreparable harm, and a balancing of the equities. Plaintiff seeks a permanent statutory injunction, not a temporary restraint, and the statute simply requires a showing that the respondent is violating a provision of ECL article 27, title 3[5] or 7 or a rule or regulation promulgated pursuant to those statutory provisions. (See, 12 Carmody-Wait 2d, NY Prac § 78:4.)
EXPECTATION OF PRIVACY
A search in the constitutional sense does not occur unless and until the government invades an interest in which a person has a reasonable expectation of privacy. (Katz v United States, 389 US 347.) To prove the existence of such a privacy interest, a person must demonstrate an actual, or subjective, expectation of privacy in the area invaded by the government and that this expectation is one that society would regard as reasonable. (Supra, at p 361 [Harlan, J., concurring].)
The Department contends that OLSI has no reasonable expectation of privacy from an administrative inspection of its landfill because (1) OLSI has no right to operate a landfill, (2) the *988 landfill is an open field, and (3) landfills are a highly regulated industry under the Colonnade-Biswell[6] rule.
(a) Right to Operate.
On numerous occasions, the Department has claimed that OLSI has no right to operate a landfill and is doing so illegally. It is true that OLSI has no administrative permit to operate a landfill. However, the defendant does have this court’s “permit” to operate the landfill, a permit that was requested by the parties to this action, including the commissioner, as well as interested municipalities and public authorities. The court’s “permit” is stronger than an administrative permit because the Department lacks the power to unilaterally revoke it. OLSI’s operation is, therefore, lawful, and although many of its powers have been restricted or controlled, it is operating a landfill pursuant to court order and is entitled to whatever privacy interests may be held by such a commercial enterprise.
(b) “Open Fields” Claim.
The open fields doctrine announced in Hester v United States (265 US 57), and recently followed in Oliver v United States (466 US_, 104 S Ct 1735), does not apply to this particular application for two reasons. First, the Department seeks to enjoin OLSI from interfering with inspections for an indefinite period of time in the future. Since an owner’s subjective expectation of privacy at the time of the search is a critical part of the privacy test, the court cannot project now the precise nature of future expectations nor objectively measure the reasonableness of the expectations.[7] Second, the court cannot say that landfill operations are not entitled, as a matter of law, to some expectation of privacy recognizable as reasonable by society. A commercial facility may have constitutionally protected privacy interests, particularly concerning enclosed structures and perhaps open areas immediately adjacent. See, Dow Chem. Co. v United States (749 F2d 307 [6th Cir 1984], revg 536 F Supp 1355), where the Court of Appeals concluded that the open areas of a chemical manufacturing plant did not enjoy an expectation of privacy from aerial observation but reached no conclusion as to the reasonableness *989 of Dow Chemical’s subjective expectation of privacy from ground level intrusions. Moreover, neither the statute nor regulation at issue limit the scope of inspection. The inspection conceivably could include books and records (see, 6 NYCRR 360.8 [a] [18]), water and toilet facilities (see, 6 NYCRR 360.8 [a] [12]), and shelters for mobile equipment (see, 6 NYCRR 360.8 [a] [14]). The Department’s routine inspection report requires an examination of available equipment, and OLSI maintains a garage and storage facilities for its equipment. Clearly, the statute and rules authorize inspection of areas that are not “open fields”. Equally as clear, an owner would have a reasonable expectation [1] of privacy in these private areas.
(c) The Colonnade-Biswell Rule.
New York’s regulation of sanitary landfills, though not deeply rooted in our history[8] (see, for comparison, Colonnade Catering Corp. v United States, 397 US 72), is pervasive.[9] This does not mean, however, that all sanitary landfills in this State are deprived of any expectation of privacy simply because they are closely regulated. “Even in closely regulated industries, the inspection provisions still must be tailored to the state’s proper objectives, and they must minimize the dangers inherent in the unbridled exercise of administrative discretion.” (Bionic Auto Parts & Sales v Fahner, 721 F2d 1072, 1079.) Moreover, the theories of implied consent and conditional privilege, which have been considered to be doctrinal underpinnings of the Colonnade-Biswell analysis (see, in this respect, Marshall v Barlow’s, Inc., 436 US 307, 313; Almeida-Sanchez v United States, 413 US 266, 271; 3 LaFave, Search and Seizure § 10.2 [c]), have been substantially discredited. (See, Donovan v Dewey, 452 US 594; Sokolov v Village of Freeport, 52 NY2d 341, 346-347; Matter of Finn’s Liq. Shop v State Liq. Auth., 24 NY2d 647, 658.) In essence, the pervasive nature of an industry’s regulation is a focal point for analysis of the reasonableness of governmental intrusion. (See, Donovan v Dewey, supra; United States v Biswell, 406 US 311, 316-317, supra; Bionic Auto Parts & Sales v Fahner, 721 F2d 1072, 1079-1080, supra; see also, 3 LaFave, Search and Seizure § 10.2 [c], 1985 Supp Pamph, at 118-119; 1 Ringel, Searches & Seizures, Arrests and Confessions § 14.3 [b] [2], at 14-15, 14-16 [2d ed].) The mere fact that a regulation is *990 pervasive may diminish a justifiable expectation of privacy; it does not eliminate the expectation.
“pervasive” regulation
The court, in concluding that regulation of solid waste management facilities is pervasive, has considered several factors. First, it is undisputed that there is a substantial State interest in assuring that solid waste is managed in a safe, sanitary, efficient, economic and environmentally sound manner. (See, L 1973, ch 399, § 1.) In enacting ECL article 27, title 7 (which applies solely to solid waste management and resource recovery facilities), the Legislature was aware of the inadequacy of existing solid waste facilities and that the practices of facility operators had resulted in conditions that increased the incidence of water, air and noise pollution, obnoxious odors, pests and environmental degradation. (Supra.) Second, in promulgating the regulations, the commissioner has acted within the scope of power granted by ECL 27-0703, and the regulations have reasonably effected the statutory purpose and intent. (Town of Junius v Flacke, 71 AD2d 423, affd 53 NY2d 616.) Third, the regulations apply to one specific industry and address the health and safety concerns expressed in the statute regarding that industry. (In this regard, compare, Colonnade Catering Corp. v United States, supra; United States v Biswell, supra; Donovan v Dewey, supra, with Marshall v Barlow’s, Inc., supra.) Fourth, the regulations, the thrust of which appears in 6 NYCRR 360.8 (which details the operating requirements for all solid waste management facilities), control virtually every phase of a landfill operation, from construction through closure and postclosure monitoring. As well, every conceivable landfill activity is regulated, including, for example, site location; the placement of waste; leachate control; blowing papers; odors; onsite roads; equipment; shelter facilities; daily, intermediate and final cover; deposit of sludge; monitoring wells; and salvage operations. Indeed, it strains the imagination to conjure up an activity that might be performed by a landfill operator that would be beyond the regulatory control of the Department. Finally, there is no dispute that inspections are an essential feature of the regulatory process. Indeed, OLSI does not quarrel with departmental warrantless inspections if they are conducted on a monthly basis.
Since defendant’s landfill has some, albeit a diminished, expectation of privacy, the court must consider the reasonableness of the intrusion in light of that privacy interest. Because the Department’s authority to intrude is derived from a statute and *991 regulation, our analysis turns now to a consideration of those provisions.
VALIDITY OF STATUTE AND REGULATION
Warrants are ordinarily required for an administrative search of private commercial premises. (Camara v Municipal Ct., 387 US 523; See v City of Seattle, 387 US 541.) An exception exists, however, where the government authorizes routine[10] inspections of a pervasively, or closely, regulated industry. (Donovan v Dewey, supra; United States v Biswell, supra.) In effect, where, as here, warrantless and unannounced inspections are necessary for effective enforcement of such a regulatory scheme, a valid statute may serve as a substitute for the warrant. (Donovan v Dewey, supra, at p 603; 1 LaFave and Israel, Criminal Procedure § 3.9 [c], at 322-323.)
To be valid, an inspection statute must satisfy certain constitutional safeguards. The statute must be carefully limited in time, place and scope. (United States v Biswell, supra, at p 315.) Additionally, it should apply to all facilities within the designated industry and specifically define the frequency of inspection. (Donovan v Dewey, supra, at pp 603-604.) The statute or regulations should also contain specific standards with which an operator must comply and should provide a specific mechanism for accommodating special privacy concerns an owner may have. (Supra, at pp 604-605.)
The constitutionality of a State statute is not a matter lightly considered. A strong presumption of constitutionality attaches to the statute which must be rebutted beyond a reasonable doubt. (Pharmaceutical Mfrs. Assn. v Whalen. 54 NY2d 486, 493.) Moreover, a court of original jurisdiction should not resort to statutory interpretation of constitutional dimensions unless there are compelling circumstances and should avoid a declaration of unconstitutionality unless such a conclusion is inescapable. (People v Hedges, supra, at p 640.) We are required to face the issue here because the commissioner has sought an injunction restraining future interference with warrantless inspections. Such a request mandates the court to determine the constitutional validity of the inspection statute. (Donovan v Dewey, supra.)
*992 Measured by these standards, the inspection statute (ECL 3-0301 [2] [g]) and rule (6 NYCRR 360.1 [j]) are facially unconstitutional.[11]
First, the court concludes that ECL 3-0301 (2) (g) satisfies much of the Donovan (supra) criteria. The statute and regulations (esp 6 NYCRR 360.8) contain detailed standards with which an operator, including those operators without permits (ECL 27-0707), must comply. The legislative enactment also provides an adequate mechanism for the accommodation of special privacy interests. In fact, ECL 71-2703 not only authorizes the Attorney-General to obtain an injunction when the Department has been refused entry, but also provides an administrative hearing procedure and subsequent judicial review thereof as an alternative remedy. Further, although neither the statute nor rule requires inspection, entry and inspection of all solid waste management facilities is authorized, and the Department considers its authority to be an affirmative duty.
The fatal flaws in both the inspection statute and rule are the absence of appropriate limitations of time, place and scope, and the failure to minimally establish some guidelines as to regularity and frequency of inspection. Neither ECL 3-0301 (2) (g) nor 6 NYCRR 360.1 (j) contains any limitation as to time. On the face of each, the Department is authorized to inspect day or night, any day of the week. Neither the statute nor rule contains any limitation upon, or specification of, the frequency of inspection. The statute and rule contain no limitation as to place. Inspections are not restricted to landfill properties. Inspection of any property is authorized. (See, People v Hedges, supra, at p 637.) Thus, if a monitoring well is constructed on property adjacent to a landfill, that property, be it agricultural or residential, would be subject to unannounced inspections. The Department could routinely enter upon the property of residential property owners to take off-site tests for odors. Records kept at an office facility miles from the landfill would be subject to day or night inspection. An employee shelter constructed off the landfill property itself would be subject to inspection. Indeed, both the statute and rule authorize the Department to roam, without restriction, about the property actively used for the disposal of waste, any facilities used by a landfill operator directly or indirectly related to landfill activities and wherever situated, neighboring proper *993 ties where landfill related structures are contained, or any other property where some impact from landfill activity might result.
In Hedges (supra), the court found that the inspection statute was “arguably” limited in scope (112 Misc 2d, at p 637). By its language, ECL 3-0301 (2) (g) provides that the scope of a routine inspection involves “ascertaining compliance or noncompliance with any law, rule or regulation”. Hence, our analysis of scope in the case sub judice must involve different statutes and regulations than those considered in Hedges. As previously noted, departmental regulations control virtually every conceivable activity that might be performed by a landfill operator and include activities having, at best, an indirect relationship to pollution control, nuisance abatement or environmental degradation, such as report and record keeping, shelters for mobile equipment, heated and adequately lit shelters for employees with water, toilet and communication facilities. (See, 6 NYCRR 360.8.) While this broad listing of regulated activities enhances the pervasive nature of the Department’s control, it likewise eliminates reasonable limitations upon the scope of inspection. This is not a case where the government seeks to inspect a business’ records and inventory pertaining to one activity, such as the dispensing of controlled substances (see, People v Rizzo, 40 NY2d 425; United States ex rel. Terraciano v Montanye, 493 F2d 682, cert denied sub nom. Terraciano v Smith, 419 US 875) or the purchase and sale of auto parts by junkyards or dismantlers (see, People v Tinneny, 99 Misc 2d 962). Here, the Department has the authority to inspect activities unrelated (or at best, tangentially related) to protection of the environment. The scope of inspection impermissibly exceeds the reasonable needs of a warrant-less routine inspection scheme.
Although a statute is facially invalid, a court is obliged to interpret the enactment in a manner that supports constitutionality. (See, Loretto v Teleprompter Manhattan CATV Corp., 58 NY2d 143,149; McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [c].) Indeed, the learned District Court Judge abstained from exercising jurisdiction so this court would have the opportunity to interpret this statutory scheme. Where statutes are directed against known and stated evils, they should not be stretched to cover situations having no reasonable relationship to those evils. (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [c].) To assist in a narrow construction of the statute, the court may consider the Department’s actual or stated policy (United States ex rel. Terraciano v Montanye, supra) and may, where possible, read into the statute additional terms that *994 would be compatible with constitutional standards. (People v Collins, 75 Misc 2d 535.)
Bearing in mind that the statute applies to routine inspections and was enacted as an essential part of a comprehensive program for the prevention of air and water pollution, abatement of nuisances and protection from environmental degradation, the court concludes that, in the case of sanitary landfills, ECL 3-0301 (2) (g) may be read as limited to areas actively utilized for the receipt, deposit, compaction, and cover of waste and areas previously utilized for those purposes and which are now inactive and that the scope of inspection may be limited to those activities of operation, closure and postclosure monitoring that directly affect the environment. Also, with respect to time, 6 NYCRR 360.4 (which applies to permits) authorizes inspections during normal business hours, and the Department’s policy is to conduct inspections during those hours. That time limitation may be read into the statute. (United States ex rel. Terraciano v Montanye, supra.)
This interpretation is not sufficient to cure all of the constitutional deficiencies. The commissioner suggests that limiting inspections to normal business hours satisfies the time requirement announced in Biswell (supra) citing as support the Terraciano decision (supra). That notion was clearly rejected in Donovan v Dewey (supra). Prior to Donovan, the United States Supreme Court struck down the OSHA inspection statute, which permitted inspections during business hours. (See, Marshall v Barlow’s Inc., 436 US, at p 338.) Aside from the distinction that Barlow’s did not involve a pervasively regulated industry, the court in Donovan made special comment in a footnote of the following distinction: “In contrast, the inspection scheme considered in Barlow’s did not require the periodic inspection of businesses covered by [OSHA] and instead left the decision to inspect within the broad discretion of agency officials” (452 US, at p 604, n 9). The court then stated, with respect to the inspection scheme in Donovan, “Thus, rather than leaving the frequency and purpose of inspections to the unchecked discretion of Government officers, the Act establishes a predictable and guided federal regulatory presence.” (452 US, at p 604.)
Clearly, Donovan v Dewey (supra), supports the proposition that statutes authorizing routine warrantless inspections must contain time limitations concerning the regularity and frequency of inspection. (See, Bionic Auto Parts & Sales v Fahner, 721 F2d, at p 1078.) In subject instance, the Department seeks an order restraining the defendant from interfering with inspec *995 tians to be conducted whenever the Department deems it necessary, i.e., whenever the Department wants. The defect in the statute and rule is that the exercise of such unchecked and unbridled discretion is authorized. Under the existing scheme, a landfill operator could be (and OLSI claims that it has been) singled out for special and discriminatory enforcement and harassment based entirely upon subjective considerations irrelevant to the operation of a landfill and without regard to a proper consideration of neutral criteria.[12] Where the statute serves as a substitute for the warrant, it must contain limitations which restrict the inspector’s capacity to harass based upon improper motive or arbitrarily discriminate in the extent of enforcement. (See, 3 LaFave, Search and Seizure § 10.2 [d].) “[E]ven a ‘closely regulated’ businessman should not be ‘singled out for more intensive attention than is the norm’ for those in that business.” (1 LaFave and Israel, Criminal Procedure § 3.9 [c], at 324.) Therefore, the statute and/or rules must delineate a regularity or frequency of inspection based upon standards derived from neutral sources. (Marshall v Barlow’s Inc., supra, at pp 320-321.)
This court cannot supply the missing standards. It would do violence to sound principles of separation of powers if the court sat as a super Legislature, overseeing the acts of the Legislature or commissioner involving questions of judgment, discretion, and allocation of resources and priorities. (Matter of Lorie C., 49 NY2d 161, 171.) While the undersigned is familiar with the facts and circumstances of this landfill, the court lacks the degree of knowledge necessary for the making of policy determinations having general State-wide application. Such matters are best left for the attention of the Legislature or administra *996 tive officials. Seemingly, reasonable standards for regularity and frequency of inspection of all landfills can be established based upon neutral criteria, such as existence of a permit, issuance of compliance orders, absence of permit, order for closure, actual process of closure. Reinspection could be permitted within a fixed time frame to determine if a prior violation had been corrected. (See, Donovan v Dewey, supra, at p 604.) It would also appear that frequency of inspection could be set at fixed intervals (for example, quarterly, monthly, etc.) or in terms of a maximum number of inspections within a fixed period (see, Bionic Auto Parts & Sales v Fahner, supra, at p 1080). In light of this decision and the Comptroller’s audit, we urge the commissioner to establish the standards necessary for proper and effective operation of the inspection process.
TEMPORARY ORDER
There is no dispute that this landfill should be subject to inspection by the Department or its representatives. Further, in the case of landfills, frequent and unannounced inspections are warranted. The peculiar facts of this case allow this court to fashion a temporary remedy that will give effect to the Department’s enforcement powers and accommodate reasonable inspections.
In 1982 the court placed the landfill under temporary receivership. The receiver was directed to supervise landfill operations consistent with the commissioner’s regulations and further orders of this court as well as to effect a closure of the landfill. OLSI was authorized to continue landfill operations and directed to abide by supervisory directives of the receiver concerning operation. The court and its receiver have the power, pursuant to that order, to direct compliance with reasonable departmental inspections.
With respect to frequency of inspection, the court has considered the fact that OLSI has not satisfied the requirements for a permit, that the landfill is in the final critical stages of closure, that the receiver has consented to inspection of closure activities, that the landfill is regional in nature and deposits tons of solid waste on a daily basis, and that by virtue of its relationship with the Onondaga County Solid Waste Disposal Authority, OLSI has been clothed with a certain degree of public immunity and should, therefore, be subject to greater public scrutiny. The court has not considered the extent to which other landfills or waste management sites have been or are inspected. This latter factor is presently the subject of discovery proceedings, and the Department has not divulged the necessary factual background *997 to the parties or this court. Hence, the order herein is temporary and is made without prejudice to a renewal application once discovery proceedings are complete.
Upon consideration of the stated factors, the court concludes that routine inspections should be conducted at a frequency no greater than three times per week. Therefore, it is the decision of this court and it is hereby ordered, that the motion for an injunction and the imposition of civil penalties be denied; and it is further ordered, that the receiver be and hereby is empowered to direct OLSI to submit to routine inspections by the Department or its representatives during normal business hours at a frequency not greater than three times per week with each such inspection not to exceed 90 minutes in duration consistent with this decision and order; and it is further ordered, that the Department or its representative shall provide all parties, the receiver, and this court with copies of any and all reports of such inspections no later than 24 hours after completion of said report.

. ECL 71-2703 (1) provides as follows: “1. Civil and administrative sanctions. Any person who violates any of the provisions of, or who fails to perform any duty imposed by titles 3 and 7 of article 27 or any rule or regulation promulgated pursuant thereto, or any term or condition of any certificate or permit issued pursuant thereto, or any final determination or order of the commissioner made pursuant to this title shall be liable for a civil penalty not to exceed two thousand five hundred dollars for each such violation and an additional penalty of not more than one thousand dollars for each day during which such violation continues, to be assessed by the commissioner after an opportunity to be heard pursuant to the provisions of section 71-1709 of this chapter, or by the court in any action or proceeding pursuant to section 71-2707 of this chapter, and, in addition thereto, such person may by similar process be enjoined from continuing such violation and any permit or certificate issued to such person may be revoked or suspended or a pending renewal application denied.”

. ECL 71-2727 (2) provides: “2. The attorney general, on his own initiative, or at the request of the commissioner, may initiate any appropriate action or proceeding to enforce any provision of article 27 or any rule or regulation promulgated pursuant thereto and any order issued or penalty assessed pursuant to this title.”

. ECL 3-0301 (2) (g) provides:
“To further assist in carrying out the policy of this state as provided in section 1-0101 of the chapter the department, by and through the commissioner, shall be authorized to * * *
“g. Enter and inspect any property or premises for the purpose of investigating either actual or suspected sources of pollution or contamination or for the purpose of ascertaining compliance or noncompliance with any law, rule or regulation which may be promulgated pursuant to this chapter. Any information relating to secret processes or methods of manufacture shall be kept confidential.”

. Section 360.1 (j) provides, to the extent pertinent here: “The commissioner or his/her representative is authorized to enter and inspect any property or premises for the purpose of ascertaining compliance or noncompliance with this Part.” The court notes that the commissioner’s regulations also contain the following provision: “(g) Activities performed pursuant to any permit issued pursuant to this Part are subject to inspection by representatives of this department during normal business hours. Departmental representatives, upon presentation of their credentials, shall be authorized to enter upon premises of any facility covered by a permit issued pursuant to this Part, or where records required to be kept pursuant to such a permit are located, for the purpose of determining such facility’s status of compliance with the permit and *987 with this Part.” (6 NYCRR 360.4 [g].) The commissioner has not claimed that OLSI has violated or is violating 6 NYCRR 360.4, and the court likewise concludes that this section applies only to those operators who have permits.

. Title 3 pertains to the transportation of waste and is not applicable to this case.

. Colonnade Catering Corp. v United States, 397 US 72; United States v Biswell, 406 US 311.

. The court recognizes that OLSI’s landfill operations will cease in a few months. However, the Department’s regulations (and hence, inspection powers) also encompass postclosure monitoring, a process that will continue for 20 years beyond closure. When directly asked to define the inspection power sought, the Assistant Attorney-General did not limit the requested injunction to 1985 activities.

. Although the Commissioner of Health had some regulatory powers over landfills (see, e.g., L 1970, ch 683), the present regulatory scheme was developed by the Commissioner of Environmental Conservation pursuant to ECL 27-0703, enacted in 1973 (L 1973, ch 399).

. The pervasive nature is discussed infra, at pp 990-991.

. The Department’s application applies to a restraint upon routine inspections, as opposed to “cause to believe” inspections. Hence, there is no need to consider the distinction discussed in People v Hedges (112 Misc 2d 632, 639-640), between the two types of inspections.

. A previous reported decision has reached the same conclusion regarding the statute. (People v Hedges, supra.) However, that decision was made in the context of a criminal proceeding and affected a different industry. We shall consider the issue anew in the context of a civil proceeding for injunctive relief in light of Donovan v Dewey (supra), which was not discussed in Hedges.

. In this context, a recent audit of the Department’s solid waste management program conducted by the Comptroller (report No. 84-S-25) indicates that 79% of all landfills in the State are operating without a permit, that the Department does not regularly inspect landfills and that most landfills are not inspected as frequently as quarterly. The Comptroller suggested that landfills should be inspected quarterly and, in its response, the Department did not disagree. Moreover, the “twice-daily” inspection scheme originated at the Onondaga County Legislature, not the Department. It appears that the Department merely acquiesced in this frequency since the services would be performed by county employees at no cost to the State. The county legislature is in no better position than this court to establish the frequency of inspections on a State-wide basis. Finally, the “inspections” performed were more in the nature of continuous monitoring, not routine inspections. In a prior conference with the court when the Department sought a search warrant, plaintiff indicated that a routine inspection could be completed in an hour, perhaps a maximum of 90 minutes. The Department’s conduct in this instance highlights the need for reasonable State-wide frequency standards.