OPINION OF THE COURT
William D. Friedmann, J.
The defendant, an owner-operator of an automobile salvage yard, is charged with possession of stolen property in the second degree. He seeks to suppress all physical evidence seized from his salvage yard as the result of a so-called administrative search of his premises pursuant to Vehicle and Traffic Law § 415-a (5) and New York City Charter § 436.
RELEVANT FACTS
On September 6, 1983, 5 to 6 members of the 90-man Auto Crime Division of the New York City Police Department, including Detective Donald Gleason, entered the defendant’s place of business, Sullie’s Auto Salvage, at 87-47 130th Street, *748 Queens. Detective Gleason testified at the Mapp hearing held by this court that when the police arrived, customers were in the junkyard and that the defendant was busy conducting business over the phone. The officer was unable, however, to supply any details concerning the actions of the customers or the nature of the defendant’s phone conversations.
Gleason informed the defendant of his intentions of inspecting the yard. He then proceeded to another part of the salvage yard across the street. Upon arrival, Gleason examined the various parts in the yard until he discovered three parts without the required VIN (vehicle identification) numbers, and, in addition, a 1980 Cadillac door with the required number. Gleason returned to the defendant’s main office where he ran a phone check concerning the Cadillac door with the Motor Vehicles Department. At that same time he requested to see the defendant’s vehicle dismantler’s book, which is required to be kept under Vehicle and Traffic Law § 415-a. Gleason was given an incomplete book by the defendant and was told that no records had been kept of off-the-street purchases. After being informed by the Department of Motor Vehicles, Gleason arrested the defendant when he was unable to show any written documentation of ownership regarding the four parts in question.
After the arrest, the defendant informed Gleason that members of the Auto Crime Division had been at the yard a few days before and had arrested him. Gleason then apologized for the current inspection because it was not his policy to inspect a particular junkyard more than once in a short time. Gleason testified at the hearing that he had no knowledge of the previous arrest and that his search of the Auto Crime Division files had revealed no record of the previous administrative search and defendant’s arrest. He also testified that he had had no reason to pick the defendant’s premises and that the choice was made totally at random.
RELEVANT LAW
Despite a diminished expectation of privacy due to longstanding governmental regulation (see generally, Donovan v Dewey, 452 US 594; People v Rizzo, 40 NY2d 425), the 4th Amendment’s prohibitions against unreasonable searches and seizures do apply to the administrative inspections of automobile junkyards. (People v Pace, 101 AD2d 336, affd 65 NY2d 684; People v Cusumano, 108 AD2d 752.) Several trial courts *749 have upheld the constitutionality of the statutory scheme involved herein (e.g., People v Camme, 112 Misc 2d 792; People v Tinneny, 99 Misc 2d 962). It is not necessary, however, to reconsider the question of whether the scheme is too over-broad to pass constitutional muster (see, Marshall v Barlow’s, Inc., 436 US 307; Camara v Municipal Ct., 387 US 523; See v City of Seattle, 387 US 541) because the instant search was not permissible even under the statutes involved.
The Auto Crime Division based its authority to conduct the inspection in question partly on the basis of Vehicle and Traffic Law § 415-a. That statute provides in pertinent part: "Upon request of an agent of the commissioner or of any police officer and during his regular and usual business hours, a vehicle dismantler shall produce such records and permit said agent or police officer to examine them and any vehicles or parts of vehicles which are subject to the record keeping requirements of this section and which are on the premises.” (Vehicle and Traffic Law § 415-a [5].)
Any implied authority to inspect defendant’s inventory occurring out of this statute can only arise when the police officers are seeking to compare the entries in the required record to the actual parts in the yard (People v Pace, supra, p 339, n 1; People v Robles, 124 Misc 2d 419, 422). Clearly, then, the statute is without application herein. The required record was woefully incomplete and no examination was possible based on those records. The defendant could have been charged with violation of the statute, but no record-checking inspection could take place (People v Pace, supra). Even if the records had been complete, the inspection would not have been justifiable under section 415-a because the police officers made no attempt to procure the record book until after they had inspected the allegedly stolen parts. The inspection, therefore, was not designed as a confirmation of defendant’s written records, and was not permissible under the Vehicle and Traffic Law.
The Auto Crime Division is also authorized to conduct warrantless administrative inspections under New York City Charter § 436, which states in pertinent part: "The [police] commissioner shall possess powers of general supervision and inspection over all licensed or unlicensed pawnbrokers, vendors, junkshop keepers, junk boatmen, cartmen, dealers in second-hand merchandise and auctioneers within the city; and in connection with the performance of any police duties he shall have power to examine such persons, their clerks and *750 employees and their books, business premises, and any articles of merchandise in their possession.”
Under normal conditions, the members of the Auto Crime Division would have been justified in inspecting defendant’s junkyard under the authority granted by the above statute. However, when a search is not made as a routine administrative inspection but is, instead, based on some degree of suspicion, the statute is clearly inapplicable (People v Pace, supra, p 340; see also, United States v Russo, 517 F Supp 83; United States v Lawson, 502 F Supp 158; People v Simovitch, NYLJ, Aug. 1, 1983, p 16, col 2, Pesce, J.). A warrant would therefore become necessary in order to conduct a search (United States v Anile, 352 F Supp 14).
Knowledge of a previous and recent inspection and arrest at the defendant’s premises would certainly convert any subsequent inspection into a search undertaken because officials have cause to believe evidence of criminality will be found (see, Michigan v Tyler, 436 US 499; People v Hedges, 112 Misc 2d 632). The detective who conducted the search claims he had no knowledge of the previous incident. The court finds the officer’s testimony as incredible that all five or six police officers involved had no knowledge of an investigation and arrest of the same defendant conducted by their very own specialized unit a few days before. The behavior of the officers tends to indicate they may have believed that they would find stolen property. The detective began a general search of the defendant’s yard without checking the required records first. Nevertheless, despite their claimed lack of actual knowledge, knowledge of the prior arrest is imputed to the inspecting officers (see, Santobello v New York, 404 US 257; People v McLaurin, 38 NY2d 123; People v Servidio, 77 AD2d 191, affd 54 NY2d 951). The inspecting officer admitted himself that he searched the division files for records of previous inspections of defendant’s premises, but he did not find any record of the prior incident. A defendant should not be penalized because of inadequate internal communications or record keeping within the law enforcement establishment (People v McLaurin, supra, p 124). This is especially true when the failure of record keeping has occurred within a small, self-contained division of a single law enforcement agency. Unlike the law enforcement agencies involved in People v Buono (121 Misc 2d 854), these Auto Crime Division officers were working jointly and toward a single objective.
Once the investigative team is charged with knowledge that *751 there is cause to believe that evidence of criminal behavior will be found, a warrant based on a traditional showing of probable cause is necessary to conduct a search (Michigan v Tyler, supra; United States v Anile, supra; People v Hedges, supra). Mere hardship in obtaining a warrant is not a valid excuse (People v Spinelli, 35 NY2d 77).
The search and seizure at defendant’s premises are also not justifiable under either the "plain view” doctrine or as a result of the fact that the evidence was found in a portion of a commercial establishment open to the public. While it is true that a police officer has as much right to enter a public place as any person (People v Saglimbeni, 95 AD2d 141, 142), this does not constitute consent on the part of the owner to wholesale searches and seizures which do not conform to 4th Amendment guarantees (Lo-Ji Sales v New York, 442 US 319, 329). Even when a law enforcement agent is permitted, or even invited, to enter a commercial premises, there is no authorization to conduct a general search for incriminating materials (People v Auletta, 88 AD2d 867, 869).
The "plain view” doctrine is also without application in this case despite the valid presence of the police in a public place. The "plain view” exception is based "on the rationale that what a person exposes to the public eye cannot be the subject of a legitimate expectation of privacy” (People v Knapp, 52 NY2d 689, 697). As stated in Coolidge v New Hampshire (403 US 443, 465), however, "any evidence seized by the police will be in plain view, at least at the [time] of seizure. The problem with the 'plain view’ doctrine has been to identify the circumstances in which plain view has legal significance”. The court, in Coolidge, goes on to outline four situations in which plain view discoveries are admissible despite the lack of a warrant. These include warranted searches of specific areas which turn up unexpected incriminating evidence, discoveries during "hot pursuit”, discoveries during lawful arrests and discoveries due to inadvertent sightings not occurring during search. "[T]he 'plain view’ doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges” (Coolidge v New Hampshire, supra, p 466).
The instant discovery of evidence does not fall within the permissible plain view exceptions. The evidence was observed before the defendant’s arrest and was certainly part of a search as outlined above.
*752 For the above reasons, the motion to suppress all physical evidence gathered by the Auto Crime Division at the defendant’s premises on September 6, 1983 shall be granted.